### Nelson HORNER

### v.

### BOROUGH OF CALIFORNIA, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 2, 1997.

Decided Aug. 1, 1997.

Harry A. Stiffler, Jr., Charleroi, for appellant.

John M. Purcell, Uniontown, for appellee.

Before DOYLE and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

The Borough of California (Borough) appeals from an order of the Court of Common Pleas of Washington County (trial court) which reversed the Borough Council's decision to deny Chief of Police Nelson Horner's claim that certain fringe benefits, including personal days, vacation days and holidays,[1] are considered "salary" as contemplated and required by the Pennsylvania Heart and Lung Act (Act).[2]

While in the course of his employment as the Chief of Police for the Borough, Horner sustained injuries as a result of a motor vehicle accident on October 17, 1992. Since that date, Horner has been receiving Worker's Compensation benefits, and the Borough has been paying Horner the difference between the Worker's Compensation benefits and his regular base pay pursuant to the Act.[3] Section 1 of the Act, provides in part

---

1. Although Horner is not covered by the collective bargaining agreement between the police union and the Borough, he is entitled to the benefits under the agreement pursuant to the "Chief's Act," which requires that the Chief of Police in political subdivisions receives no less than the same pay and fringe benefits as received by the highest ranking police officer in the bargaining unit. Act of December 18, 1984, P.L. 1004, § 1, 43 P.S. § 218.

Although the trial court did not address whether Horner was entitled to compensation for unused sick leave, the Borough Council, in its find-

ings of fact and conclusions of law, and the parties, in their briefs, indicated that the accumulation of sick leave was also at issue. However, at oral argument, counsel for the Borough waived this issue. Therefore, we will not address it.

2. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638.

3. The parties stipulated to one exception when benefits were not paid: For three weeks in March 1994, Horner attempted to return to work on a light duty basis.

that "any policeman ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased." 53 P.S. § 637(a).

Horner made a claim to the Borough Council, contending that the Borough should have compensated him for his fringe benefits that he would have received had he been working because these benefits are included in his "salary" under the Act. Specifically, Horner claimed for 1993, compensation for two personal days and ten paid holidays,[4] and for 1994, payment for three personal days,[5] ten holidays and five weeks of vacation. After a hearing, the Borough Council rejected Horner's method of calculating "salary" which could result in one's earning more money while on disability than one could earn while working full-time. The Borough Council concluded that the term "salary" as defined by the collective bargaining agreement, or the terms of his employment, does not include the benefits (hereafter collectively referred to as "vacation pay") sought by Horner. Accordingly, the Borough Council denied Horner's claim.

Horner then appealed to the trial court, which reversed the Borough Council. The trial court stated that to find otherwise would thwart the important public purpose of the Heart and Lung Act, which "is to prevent an injured officer from suffering loss of rank, standing, salary or benefits while he or she is prevented from working due to a work-related injury." *Horner v. Borough of California,* (No. 94–6710, filed April 1, 1996), slip op. at 5. The trial court then remanded the matter to the Borough Council for a determination of the actual number of personal, vacation and holidays due to Horner. This appeal followed.[6]

The Borough contends that since the collective bargaining agreement makes it clear that vacation pay is not appropriate unless the employee actually works, Horner is not entitled to such pay while he is disabled. In *Schmidt v. Borough of Stroudsburg,* 670 A.2d 208 (Pa.Cmwlth.1996), this court was presented with a similar issue: Whether overtime pay should be included in the calculation of "salary" in determining benefits due under the Heart and Lung Act. In that case, the police officer claimed that the weekly amount paid pursuant to the Act should include the overtime earned during the year prior to the accident. *Id.* at 209.

Holding that overtime wages should not be included, the court recognized that it had not previously defined "salary" for purposes of the Heart and Lung Act. *Id.* Therefore, as guidance the court looked to its definition of "salary" as it relates to the calculation of retirement benefits under the Act of May 29, 1956, P.L. 1804, *as amended,* 53 P.S. §§ 767–778, which authorizes municipalities to create police pension funds. In distinguishing "salary" from the more general term "pay," we stated that:

> "Salary" ... has a more restricted, specific meaning than "pay" as a category of compensation. "Salary" is a special type of compensation, where a fixed, stated amount is paid, periodically as by the year, quarter, month, week, or other fixed period.... While "salary" denotes a fixed amount of compensation periodically paid without regard to hours actually worked, overtime compensation varies according to the amount of extra work performed. [citations omitted]. Rather than being regular, periodic, fixed compensation, overtime earnings are customarily irregularly paid in varying amounts depending upon when,

**4.** All fringe benefits were paid to Horner through 1992, and Horner received his five weeks paid vacation for 1993.

**5.** There is an inconsistency regarding the number of personal days that Horner is claiming for 1994. The Borough Council made a finding that Horner is claiming only two personal days for 1994 based on the collective bargaining agreement. However, the trial court found that Horner was claiming three personal days as it

appears in the Notes of Testimony before the Borough Council on pages 9 and 10.

**6.** Where, as here, a complete record was developed before the local agency decision, our scope of review is whether the Borough Council violated constitutional rights, committed an error of law or whether necessary findings of facts were unsupported by substantial evidence. *Appeal of Suspension of McClellan,* 82 Pa.Cmwlth. 75, 475 A.2d 867, 869 (1984).

and to what extent, the additional work is actually performed. [citations omitted].

*Id.* at 209–10 [quoting *Borough of Beaver v. Liston,* 76 Pa.Cmwlth. 619, 464 A.2d 679 (1983)]. Because this definition was in the context of police benefits based on "salary," the court found that it applied equally to the Heart and Lung Act. *Id.* at 210. The court also noted that the Act's modification of the term "salary" by the term "fixed" further supported its conclusion that in order to be included in the calculation of "salary," wages paid must be fixed as opposed to variable. *Id.*

We conclude that the above analysis applies with equal force to vacation pay. Under the terms of the agreement, an officer is entitled to a fixed annual salary in exchange for working a fixed number of days for a fixed number of hours per day. The balance of the officer's time is free to be used as he or she chooses. The agreement further provides for a fixed amount of compensation per hour or per day if the officer elects, or the department requires,[7] that a portion of that free time be, in fact, used for additional work. Like overtime, vacation days and holidays worked will vary from officer to officer and from year to year. Whether a police officer chooses to receive extra compensation for working on these days is as unpredictable as the officer's choice to work overtime hours. Thus, we hold that vacation pay does not constitute "salary" under the Act because it is not based on fixed compensation which is regularly paid, but, instead, it varies depending upon when and if the employee actually works. Therefore, vacation pay is not to be included in calculating benefits under the Act.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 1st day of August, 1997, the order of the Court of Common Pleas of Washington County dated April 1, 1996, is reversed, and the matter is remanded to the court of common pleas for the entry of an order reinstating the decision of the Borough Council.

Jurisdiction relinquished.

---

**7.** Officers, for instance, are required to work certain holidays on a rotating basis.